UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EAST COAST BROKERS AND PACKERS, INC.,

    Plaintiff,

v.                                        CASE NO: 8:07-cv-171-T-26TBM

SEMINIS VEGETABLE SEEDS, INC.,

    Defendant.
_____/

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment, Statement of Undisputed Facts, and various declarations and exhibits (Dkts. 43, 45, 54-57), and Plaintiff's Responses with affidavits, depositions, exhibits and supplemental authority. (Dkts. 68, 69, 74, 75, 76, 79, 86, 91, 92 & 101.) After careful review of the arguments and the entire file, the Court concludes that summary judgment should be denied.

**Pertinent Facts**

Plaintiff is a large commercial tomato grower and has purchased large amounts of seeds from Defendant, a vegetable seed producer, for well over ten years. This lawsuit involves the purchase of Florida 47 (FL 47) variety tomato seed[1] in 2005. Plaintiff

---

[1] FL 47 variety is interchangeable with the FL 47R variety.

purchased 2,000,000 FL 47 tomato seeds[2] from Defendant on February 22, 2005, from part of lot number 634258.[3] Each can of seeds contains a warranty and limitation of liability that provides in part: "Seminis warrants that the seed in this package/can is labeled as required by law and will conform to the label."

It is the practice of Plaintiff to open up the boxes of seed when they are delivered and to check to make sure that the labels on the cans inside reflect the type of seed ordered. The seeds are then picked up by the greenhouses so that the seeds may be sown and grown into seedlings. The two greenhouses used to develop the seedlings with respect to the seeds at issue were Plants of Sarasota, Inc. (PSI) and Transgro. PSI delivered seedlings to some of Plaintiff's Florida farms and its Virginia farms. Transgro delivered seedlings only to Plaintiff's Florida farms on September 6 and 7, 2005. Of the 2,000,000 seeds, 1,760,000 were planted in Virginia and 200,000 were planted in Florida.

Plaintiff alleges that the seeds from lot number 634258 were defective because the crops produced did not run true to the FL 47 variety. The crops produced displayed abnormal shaped fruit and spines, which resulted in a lost yield. Plaintiff claims the lost yield was the result of a latent defect. Plaintiff seeks damages in the amount of the value of the crop to be raised, less salvage and any costs which would have been incurred but were not. Plaintiff characterizes this lawsuit as a suit for mislabeling of the seeds. The

---

[2] The seeds are sold in cans of 40,000 seeds, which amounts to 50 cans.

[3] Lot 634258 was comprised of approximately 13,000,000 size "6" seeds.

four-count Complaint (Dkt. 2) alleges (1) breach of express warranty in count I—that "the seed will in fact be the variety represented, and produce a tomato plant consistent with the variety[,]" (2) breach of implied warranty, including fitness for a particular purpose and merchantability in count II, (3) negligent misrepresentation in count III, and (4) negligence in count IV.

## Argument

Defendant claims that counts III and IV are tort claims barred by the economic loss rule, that counts I and II are barred by the warranty disclaimer and limitation of remedies marked on the seed can, and that the entire case is incapable of proof based on Plaintiff's lack of evidence showing when and where the seeds at issue were planted and the basis for damages. Plaintiff counters that it would be premature to make it choose between its contract remedies in counts I and II and its tort remedies in counts III and IV before a trial on the merits. Based on the development of the evidence, the facts may fall into either a tort or a contract claim and, therefore, Plaintiff literally begs this Court not foreclose its options at this juncture when the facts, taken in the light most favorable to the non-moving party, could arguably support a claim under any one of the four counts.

## Counts III and IV

Defendant asserts that the economic loss rule prevents Plaintiff from recovering lost economic expectations in two situations: (1) products liability causing damage to the product only and (2) contractual privity. See Indemnity Ins. Co. of N. Amer. v. American Aviation, Inc., 891 So.2d 532, 536 (Fla. 2004). The economic loss rule in Florida has

traveled a path unto its own as is explained in American Aviation. No doubt Plaintiff cannot be faulted for pleading the counts it did. Negligent misrepresentation remains a viable exception to the economic loss rule, and cases that do not fall into one of the two categories for economic loss should be decided under traditional negligence principles. American Aviation, 892 So.2d at 543. Moreover, the Florida Supreme Court declined "to make any per se distinction between damages for direct economic injury, such as the loss of the benefit of the bargain, and consequential economic damages, such as lost profits." Id.

The issue is whether this case alleges facts to support a true negligent misrepresentation claim. To do so, the negligent misrepresentation must be separate and distinct from the misrepresentations forming the basis of the express warranty. Such negligent misrepresentation must not be related to the performance of the contract, but rather must be independent of it. See Vesta Const. and Design, LLC v. Lotspiech & Assocs., Inc., 974 So.2d 1176, 1181-82 (Fla.Dist.Ct.App. 2008). Plaintiff posits that it is the misrepresentation made by the label that induced it to buy the seed and, therefore, the "mislabeling" constitutes the negligent misrepresentation, which is not based on the conduct of the contract. Based on the Plaintiff's position that this is a case of mislabeling, the claims in counts III and IV may proceed past summary judgment with the caveat that Plaintiff will be limited at trial to the theories borne out by the facts.

## Counts I and II

Plaintiff has explained that the advertisement materials attached to the Complaint merely describe the variety of seed FL 47, which was supposed to be found in the cans of seed in lot 634258 delivered by Defendant in 2005. The disclaimers and limitation of remedies displayed on the cans of seed, therefore, need not necessarily act to relieve Defendant of liability in selling a can which did not contain the particular seed designated on the label. See Jackson Grain Co. v. Hoskins, 75 So.2d 306 (Fla. 1954); Corneli Seed Co. v. Ferguson, 64 So.2d 162 (Fla. 1953). As factual support for Plaintiff's position, it relies on the affidavits of Dr. Maynard and Batiste Madonia Jr. to show that the seed grown from the lot at issue was totally inconsistent with FL 47 variety. The Court finds this showing sufficient to avoid summary judgment against Plaintiff.

## Problems of Proof

Defendant claims that Plaintiff cannot prove when and where lot number 634258 seeds were planted and grown. Plaintiff is "prohibited from introducing at trial evidence or testimony inconsistent with the evidence and testimony elicited from Mr. Robert Meade during the course of his Rule 30(b)(6) deposition." (Dkt. 31). Defendant claims that this ruling forecloses Plaintiff from proving its damages at trial.

Plaintiff asserts that Defendant has mischaracterized the deposition testimony of Mr. Meade, and furthermore, submits an affidavit of Janet Schwartz Miller, the office manager of Plaintiff, who avers the times and places the seeds were planted. The invoices reflect that on May 31, June 14 and 28, and July 11, 2005, the seedlings grown from lot number 634258 were shipped to the Virginia farms for planting. Plaintiff also

relies on the deposition testimony of Greg Wilson to establish that the seedlings delivered in Florida on September 6 and 7, 2005, produced the same abnormal plants as those grown in Virginia and links the abnormal Florida crop to the abnormal crops in Virginia as originating from lot number 634258.  Plaintiff has surely raised genuine issues of material fact with respect to whether the when and where of planting the seeds proves that lot number 634258 was the culprit lot and that the abnormal plants can be linked to that lot.  Defendant will have ample opportunity at trial to cross-examine witnesses. Accordingly, summary judgment is denied.

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 43) is **DENIED.**

**DONE AND ORDERED** at Tampa, Florida, on February 6, 2009.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FUNISHED TO**:
Counsel of Record